IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LYNDA JO CASEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-1016-L |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Lynda Jo Casey, seeks judicial review of the Social Security Administration's denial of disability insurance benefits. This matter has been referred by United States District Judge Tim Leonard for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

## I.   Procedural Background

Plaintiff filed her application for disability insurance benefits on November 17, 2009, alleging a disability onset date of June 1, 2005.[1] The Social Security Administration denied the application initially and on reconsideration. Following a hearing, the Administrative Law Judge (ALJ) issued the first unfavorable decision. *See* Administrative Record (AR) [Doc. No. 12], 46-55. The Appeals Council denied Plaintiff's request for review. AR 1-3. Plaintiff appealed, and pursuant to an agreed Motion to Reverse and Remand Pursuant to Sentence 4, filed by the Commissioner, AR 621-623, this court reversed and remanded the case for further proceedings.

---

[1] At the administrative hearing, Plaintiff amended her disability onset date to March 1, 2009. AR 9. It is undisputed that Plaintiff's date last insured for disability benefits expired March 31, 2009. AR 8.

AR 624-625. The agreed remand instructed the ALJ to re-evaluate the opinions of Plaintiff's treating physicians, and in light of the new analysis, to re-evaluate Plaintiff's ability to do her past relevant work. AR 621. On June 23, 2014, the ALJ issued a second unfavorable decision. AR 567-577. This appeal followed.

## II. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## III. Plaintiff's Claims

Plaintiff contends the ALJ erred as a matter of law by failing to properly evaluate the opinions of Dr. Woody Jenkins, Plaintiff's treating physician. Plaintiff also contends the ALJ's

finding that she could perform her past relevant work as data entry clerk is not supported by substantial evidence.

## IV. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process in determining whether Plaintiff was disabled before her date last insured, March 31, 2009. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date, March 1, 2009. AR 570.

At step two, the ALJ identified one impairment he deemed to be severe: major depression. The ALJ found Plaintiff's sleep disturbance, fatigue, weight loss, hip pain, sleep apnea and anxiety were not medically determinable impairments. AR 571. The ALJ did mention Plaintiff's medically determinable stress-related hives, but noted that impairment resolved with medication. *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments before her date last insured that met or equaled the severity of one of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Listings). AR 571-572. The ALJ considered Listing 12.04, Affective Disorders, and 12.06, Anxiety Related Disorders. *Id.*

At the first phase of step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform all exertional levels but with the following nonexertional limitations: She is able to perform simple and moderately complex tasks involving no more than superficial contact with co-workers, supervisors and the public.

AR 572. In determining the duties of a data entry clerk at the second phase of step four, the ALJ relied on Plaintiff's description of her job duties and the testimony of the vocational expert (VE):

> The claimant previously reported that this job [data entry clerk] required her to sit 3 ½ hours and walk or stand for fifteen minutes each. She indicated that she did not have to lift more than ten pounds. She did not have to supervise, hire or fire people. She primarily entered data.

AR 576. At the third phase of step four, the ALJ compared Plaintiff's RFC with the demands of data entry clerk, as Plaintiff had actually performed that job, and determined Plaintiff could perform her past relevant work. *Id.* Thus, in his second unfavorable decision, the ALJ determined at step four of the sequential evaluation that Plaintiff was not disabled before her date last insured. The ALJ did not make an alternate finding at step five.

## V. **Analysis**

### A. **Analysis of Treating Physician Evidence**

"An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); *see also* 20 C.F.R. § 404.1527(c)(2). When an ALJ considers a treating physician's opinion, he is required to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks and alteration omitted). These reasons must be specific and legitimate. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The ALJ must follow a specific process when he determines the weight to be given to a treating physician's opinion. He "'must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques[.]'" *Mays. v. Colvin*, 739

4

F.3d 569, 574 (10th Cir. 2014) (citation omitted). "If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.'" *Id.* (citation omitted). "'If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.'" *Id.* (citation omitted). If the opinion is not entitled to controlling weight, the ALJ must nevertheless determine what lesser weight the opinion is due. He must both (1) weigh the opinion "under the relevant factors," *id.* and (2) "give good reasons in the . . . decision for the weight [the ALJ] ultimately assigns the opinion." *Watkins*, 350 F.3d at 1300-01 (internal quotation marks and alteration omitted).

The relevant regulatory factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (internal quotation marks omitted). So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

But in this case, the ALJ failed to provide such a discussion. The opinion in question is dated November 19, 2009. On that date, Dr. Jenkins completed a form generated by the Union Central Life Insurance Company, entitled "Attending Physician's Statement Life and Disability Insurance." AR 263-264. A note in Plaintiff's medical records dated November 17, 2009, indicates Plaintiff had requested that Dr. Jenkins complete the form. AR 262. According to the

5

note, Plaintiff had also requested a letter, "indicating hardship and that she is not fully functioning," so that she could refinance her house mortgage and get money out of the equity. The note further explained that Plaintiff had "been late on payments" and that "Fannie Mae won't refinance" without a letter indicating Plaintiff was limited by a "mental situation." *Id.*

Regardless of Plaintiff's motive in seeking the completed form and letter, the fact remains that Dr. Jenkins, as Plaintiff's treating physician, diagnosed Plaintiff with bipolar disorder and stated his opinion that she had marked limitations in the ability to function in "stress situations or engage in interpersonal relations." AR 264. The ALJ summarily gave Dr. Jenkins' opinion little weight:[2]

> Treating source Woody Jenkins, M.D., diagnosed the claimant with bipolar disorder and indicated the claimant was unable to engage in stressful situations or interpersonal relationships and unable to work since January 2008 (Exhibit 4F/page4). I gave little weight to this opinion as the claimant's activities, physical and mental status exam findings support a conclusion that the claimant's impairments are not as limiting as alleged.

AR 575. It is apparent that the ALJ did not use the prescribed process for determining the weight to be given Dr. Jenkins' opinion. Although the court may infer the ALJ did not give Dr. Jenkins' opinion controlling weight, the ALJ did not follow through with a proper analysis of the regulatory factors before determining the opinion was entitled to little weight. As Plaintiff notes, the ALJ's vague reference to "claimant's activities" does not suffice. The extent of the

---

[2] The Tenth Circuit Court of Appeals has found that affording a treating physician's opinion "little weight" is tantamount to rejecting the opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). In *Chapo*, the ALJ had rejected the opinion of a treating physician based on only one factor: the length of the treating relationship. *Id.* The court held that even if one factor were sufficient to justify not giving a treating physician's opinion controlling weight, the opinion was merely reduced to the status of an examining-source opinion—opinions that are often fully relied on as the dispositive basis for RFC findings. *Id.* Thus, the ALJ was required to consider all of the factors set out in the regulations and to "provide specific, legitimate reasons for rejecting [the opinion]." *Id.* (citing *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003)).

Plaintiff's activities is not one of the regulatory factors to be considered when evaluating the opinion of a treating source.[3]

The Commissioner relies on the opinion of state agency psychologist Laura Lochner, Ph.D. Dr. Lochner reviewed the medical evidence and completed a Psychiatric Review Technique Form on January 16, 2010. AR 363-375. Dr. Lochner determined the evidence was insufficient "to establish disability on or before Plaintiff's last date insured." AR 375. The ALJ gave "some weight" to the opinions of the state agency medical consultants, including Dr. Lochner, apparently to support the ALJ's own conclusion that "the medical evidence and intensity of treatment fails to support a conclusion that the claimant's alleged limitations result in significant limitations." AR 575. But medical evidence in the record supports Dr. Jenkins' opinion. Dr. Jenkins had prescribed antidepressant and anti-anxiety medications including Lexapro, Effexor and Pristiq based on Plaintiff's complaints of sleep disturbance, emotional lability, lethargy and fatigue. AR 288, 296-305.

---

[3] The Commissioner may, of course, consider the extent of a claimant's daily activities along with the medical records in determining the ultimate question of disability. But here, the ALJ was apparently considering Plaintiff's activities of daily living to discredit the treating physician's opinion; not to determine the ultimate question of disability. Moreover, the ALJ cited very limited activities that are not inconsistent with Dr. Jenkins' opinion. The ALJ noted Plaintiff drank coffee, watched television, made dinner once a week, and could do laundry, clean and mow with reminders and encouragement. But the ALJ also noted that family and friends helped Plaintiff prepare dinner most of the time. Plaintiff often did not get dressed for one or two days, sometimes slept or stayed awake for days at a time, sometimes picked her grandson up from school, and sometimes fed and watered her dog. She admitted she could not handle money well and forgot to pay bills. AR 573-574. The ALJ also relied on Plaintiff's apparent ability "to care for her young grand children at home, which can be quite demanding both physically and emotionally." AR 574. But the ALJ ignored records indicating that Plaintiff was not functioning well in the role of parenting her grandchildren because of the functional limitations caused by the very mental impairments the ALJ was trying to minimize. Moreover, under the Social Security regulations, the Commissioner generally does not equate such activities with the ability to perform substantial gainful activity. 20 C.F.R. § 404.1572(c). While household activities may be considered, along with the medical evidence, in determining whether a claimant is disabled, they do not in themselves establish that a claimant is able to engage in substantial gainful activity. *Talbot v. Heckler*, 814 F.2d 1456, 1462–63 (10th Cir. 1987). *See also Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983) (activities such as yard work, household tasks, car repair and occasional car trips judged to be insignificant as they were not conducted regularly or for prolonged periods).

In March of 2009, Dr. Jenkins referred Plaintiff to the Laureate Psychiatric Clinic and Hospital. Marilyn Possett, LCSW,[4] wrote to Dr. Jenkins expressing her diagnostic impression as Major Depressive Disorder, Recurrent, Moderate. AR 506. Plaintiff obtained prescriptions for Effexor and Trazadone to treat her depression. AR 505.

Although the ALJ did not ignore Dr. Jenkins' opinion, as he did in the first unfavorable decision, the ALJ's analysis in the decision under review is insufficient. On remand, the ALJ should use the regulatory process and apply the relevant suggested factors in determining the weight Dr. Jenkins' opinion should be given.

### B. The ALJ's Findings at Step Four

Plaintiff challenges the ALJ's finding that she can meet the mental demands of Data Entry Clerk, the past relevant work identified by the VE as the only past relevant work Plaintiff could perform. As an initial matter, the undersigned notes a discrepancy between the testimony of the VE and information describing the duties of Data Entry Clerk contained in the Dictionary of Occupational Titles (DOT). At the administrative hearing held before the first unfavorable decision was rendered, the VE described the job of Data Entry Clerk as sedentary, semiskilled work with a specific vocational preparation (SVP)[5] level of 3. AR 39. The ALJ adopted the

---

[4] As a licensed clinical social worker, Ms. Possett is not considered to be a "treating source." But "[r]egardless of its source, [the ALJ] will evaluate every medical opinion" received into the record. 20 C.F.R. § 404.1527(c). The ALJ mentioned Plaintiff's treatment at the Laureate Clinic in his summation of the hearing evidence. AR 574. The ALJ did not, however, evaluate Ms. Possett's opinion. Social Security Ruling 06-03p (SSR 06-03p) provides guidance on consideration of opinions and evidence from "other sources" that are not "acceptable medical sources." Licensed clinical social workers, such as Ms. Possett, fall into the classification of "other sources." *Id.*, 2006 WL 2329939 at *2. The ruling explains that the factors set forth in the regulations for considering medical opinions can be applied to opinion evidence from "other sources." The factors include how long the source has known the individual and how frequently the source sees the individual; how consistent the opinion is with other evidence; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairments; and any other factors that tend to support or refute the opinion. *Id.* at *4-5.

[5] "SVP is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker

8

VE's description. AR 576. But the DOT actually rates the SVP of Data Entry Clerk at level 4. DOT § 203.582-054. An SVP level 4 means the lapsed time required to learn the job is "[o]ver 3 months up to and including 6 months." *Id*. Using the skill level definitions provided in the Commissioner's regulations at 20 C.F.R. § 404.1568, "unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." Social Security Ruling 00–4p, 2000 WL 1898704 at * 3. On remand, the ALJ should attempt to reconcile the inconsistency in the VE's testimony with the information in the DOT or seek further development of the record as it pertains to this issue.

The ALJ asked the VE to consider a hypothetical person who had no physical limitations, but was limited to performing simple and some moderately complex tasks with superficial contact with coworkers, supervisors and the public. The VE testified that such an individual could perform the duties of Data Entry Clerk. AR 40.

When the ALJ changed the hypothetical question to include limitations to which Plaintiff had testified, however, the VE's answer was very different. The VE testified that Plaintiff would be unable to perform not only her past relevant work, but also any other work existing in the national economy. The VE explained:

> [Plaintiff] testified to problems with depression and anxiety, sometimes sleeping three to four days at a time, not eating, showering, and being up for 24 hours and not sleeping at all. Crying spells, difficulty with memory. If you took the testimony, she wouldn't be able to work eight hours a day, five days a week.

AR 41. At this point, the two issues identified by Plaintiff become intertwined. The ALJ's rejection of Plaintiff's testimony was based, in large part, on what he viewed as a paucity of

---

situation.' An SVP level of 3 means that the lapsed time required to learn the job is '[o]ver 1 month up to and including 3 months.'" *Dikeman v. Halter*, 245 F.3d 1182, 1186 (10th Cir. 2001) (quoting United States Department of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. B, B–1 (1993)).

medical evidence. A proper analysis of Dr. Jenkins' treating physician opinion is, therefore, crucial to this court's review of the ALJ's unfavorable step four decision. Thus, reversal and remand is necessary, as this court is not free to reweigh the evidence and substitute its opinion for that of the Commissioner. *Bowman*, 511 F.3d at 1272.

In sum, the ALJ's legally insufficient analysis of Dr. Jenkins' treating physician opinion requires reversal and remand for further proceedings. Because a proper analysis of the treating physician's opinion could affect the ALJ's step four determination, the Commissioner should also revisit the findings at step four.

## RECOMMENDATION

It is therefore recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by November 19, 2015. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); LCvR 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 29 day of October, 2015.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE